No. 21-20279

# United States Court of Appeals
# for the Fifth Circuit

---

Freedom From Religion Foundation, Inc.; John Roe,

*Plaintiffs-Appellees,*

v.

Wayne Mack,

*Defendant-Appellant.*

---

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division, No. 4:19-cv-1934

---

## BRIEF FOR TEXAS REPRESENTATIVE MATT KRAUSE AND 17 OTHER MEMBERS OF THE TEXAS LEGISLATURE AS *AMICI CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL

---

Gene C. Schaerr
H. Christopher Bartolomucci
 *Counsel of Record*
Brian J. Field
Joshua J. Prince
Annika M. Boone
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

*Counsel for Amici Curiae*

September 29, 2021

# SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

No. 21-20297
*Freedom From Religion Foundation, Inc.; John Roe v. Wayne Mack*

Pursuant to 5th Cir. R. 29.2, the undersigned counsel of record hereby certifies that, in addition to the persons and entities listed in the Appellant's Certificate of Interested Persons, the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Amici Curiae* Members of the Texas House of Representatives:

| | |
|---|---|
| Rep. Matt Krause | Rep. Mayes Middleton |
| Rep. DeWayne Burns | Rep. Scott Sanford |
| Rep. Dustin Burrows | Rep. Matt Schaefer |
| Rep. Briscoe Cain | Rep. Matt Shaheen |
| Rep. Jeff Cason | Rep. Bryan Slaton |
| Rep. David Cook | Rep. Valoree Swanson |
| Rep. James Frank | Rep. Steve Toth |
| Rep. Phil King | Rep. Cody Vasut |
| Rep. Jeff Leach | Rep. James White |

Counsel for *Amici Curiae*:

Gene C. Schaerr, Esq.
H. Christopher Bartolomucci, Esq.
Brian J. Field, Esq.
Joshua J. Prince, Esq.
Annika M. Boone, Esq.
Schaerr | Jaffe LLP

Other Interested Persons:

Ruan J. Meintjes, law student, SMU Dedman School of Law

/s/ *H. Christopher Bartolomucci*
H. Christopher Bartolomucci

*Counsel of Record for Amici Curiae*

# TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS............i

TABLE OF AUTHORITIES....................................................iv

IDENTITY AND INTEREST OF *AMICI CURIAE* AND SOURCE OF AUTHORITY TO FILE BRIEF....................................1

RULE 29(a)(4)(e) STATEMENT ..............................................2

ARGUMENT ........................................................................2

    I.    ROE LACKS STANDING. .......................................3

        A.    Roe Has Not Been to Judge Mack's Courtroom in More Than Four Years and Now Has a Policy of Never Going There in the Future. ...............................3

        B.    Roe Fails This Court's Test for Standing to Sue a State Court Judge for Prospective Relief. ....................8

        C.    This Court Should Reject the "Offended Observer" Theory of Standing in Establishment Clause Cases. ..........................................................................11

        D.    Roe's Status as a Member of the Bar and a Courtroom Litigator Undermines His Claim of Injury..........................................................................16

    II.    FFRF LACKS STANDING. ..................................22

CONCLUSION .....................................................................23

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Adams v. McIlhany*, 764 F.2d 294 (5th Cir. 1985)....................................9

*Allen v. Wright,* 468 U.S. 737 (1984)................................................13, 14

*American Legion v. Am. Humanist Ass'n,*
   139 S. Ct. 2067 (2019) ...........................................................11

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) ...............................................................6, 7

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) .........................3, 4, 5, 14

*Bauer v. State of Texas*, 341 F.3d 352 (5th Cir. 2003) ..............................9

*Cameron Cty. Hous. Auth. v. City of Port Isabel,*
   997 F.3d 619 (5th Cir. 2021) ................................................16

*City of Houston v. Dep't of Hous. & Urban Dev.,*
   24 F.3d 1421 (D.C. Cir. 1994)................................................8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..................................14

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................5

*Diamond v. Charles*, 476 U.S. 54 (1986)................................................12

*Doe v. Madison Sch. Dist. No. 321,*
   177 F.3d 789 (9th Cir. 1999) (en banc) .................................6

*Doe v. Tangipahoa Parish Sch. Bd.,*
   494 F.3d 494 (5th Cir. 2007) (en banc) .................................6

*Freedom From Religion Found., Inc. v. Mack,*
   4 F.4th 306 (5th Cir. 2021)..................................................13

*Freedom From Religion Found., Inc. v. Mack,*
   No. 4:17-cv-881, 2018 WL 6981153
   (S.D. Tex. Sept. 27, 2018)....................................................21

# TABLE OF AUTHORITIES (CONT'D)

## Cases (cont'd)

*Gaylor v. Reagan*, 553 F. Supp. 356 (W.D. Wis. 1982) ........................... 22

*Harris v. City of Houston*, 151 F.3d 186 (5th Cir. 1998) ..................... 7, 8

*Hein v. Freedom From Religion Found., Inc.*,
  551 U.S. 587 (2007) ............................................................... 19

*In re Navy Chaplaincy*, 534 F.3d 756 (D.C. Cir. 2008) ........................... 14

*Jones v. Clear Creek Indep. Sch. Dist.*,
  977 F.2d 963 (5th Cir. 1992) .................................................. 19

*Lujan v. Defenders of Wildlife,* 504 U.S. 555  (1992) ............................. 13

*Marsh v. Chambers*, 463 U.S. 783 (1983) ........................................ 18, 19

*Moore v. Bryant*, 853 F.3d 245 (5th Cir. 2017) ...................................... 15

*Reed v. Goertz*, 995 F.3d 425 (5th Cir. 2021) ......................................... 21

*Serafine v. Crump*, 800 F. App'x 234 (5th Cir. 2020) ........................... 8, 9

*Shea v. Brister*, 26 F. Supp. 2d 943 (S.D. Tex. 1998) ............................ 20

*Soc'y of Separationists, Inc. v. Herman,*
  959 F.2d 1283 (5th Cir. 1992) (en banc) ..................................... *passim*

*Staley v. Harris Cty.*, 485 F.3d 305 (5th Cir. 2007) (en banc) ................. 5

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) ................... 14

*Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997) ...................................... 16

*Town of Greece v. Galloway*, 572 U.S. 565 (2014) ..................... 12, 13, 18

*Valley Forge Christian Coll. v. Ams. United for Separation of
  Church & State, Inc.*, 454 U.S. 464 (1982)................................. 3, 11, 12

## TABLE OF AUTHORITIES (CONT'D)

### Cases (cont'd)

*Wilson v. Garcia*, 471 U.S. 261 (1985) ....................................................21

*Zimmerman v. City of Austin*, 881 F.3d 378
  (5th Cir. 2018) .......................................................................................16

### Constitutional Provision

ARIZ. CONST., art. XXVIII ..........................................................................6

### Statute and Rule

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) .......................................21

Texas Disciplinary R. of Prof'l Conduct 1.01 ..........................................17

### Other Authority

Kimberly Strawbridge Robinson, *Supreme Court Bar
  Admission Has Its Perk*s, BLOOMBERG LAW (May 19, 2016)................19

## IDENTITY AND INTEREST OF *AMICI CURIAE* AND SOURCE OF AUTHORITY TO FILE BRIEF

*Amici curiae* are Matt Krause and 17 other members of the Texas legislature. Rep. Krause is a member of the Texas House of Representatives, serves on the Committee on the Judiciary and Civil Jurisprudence, and founded the House Freedom Caucus. The other Texas legislators joining this brief are:

Rep. DeWayne Burns
Rep. Dustin Burrows
Rep. Briscoe Cain
Rep. Jeff Cason
Rep. David Cook
Rep. James Frank
Rep. Phil King
Rep. Jeff Leach
Rep. Mayes Middleton
Rep. Scott Sanford
Rep. Matt Schaefer
Rep. Matt Shaheen
Rep. Bryan Slaton
Rep. Valoree Swanson
Rep. Steve Toth
Rep. Cody Vasut
Rep. James White

*Amici* have a keen interest in the proper application of the Establishment Clause of the First Amendment to the United States Constitution by the federal judiciary. When improperly applied by federal courts, the Establishment Clause often curtails constitutionally

protected free exercise of religion and religious expression. Whether plaintiffs have the required standing to bring Establishment Clause challenges is therefore of vital importance to *amici*. *Amici* submit this brief to help ensure that Texans may continue to acknowledge their country's religious heritage and the important public role religion plays in our national life without being haled into federal court by—and potentially forced to pay attorney's fees to—litigants who lack standing to seek relief from a challenged religious expression or display.

*Amici* are authorized to file this *amici* brief by Fed. R. App. P. 29(a)(2) because all parties have consented to its filing.

## RULE 29(a)(4)(e) STATEMENT

*Amici* hereby state that no party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund the preparation or submission of the brief; and that no person other than *amici*, or its counsel contributed money that was intended to fund the preparation or submission of the brief.

## ARGUMENT

Plaintiffs John Roe and Freedom From Religion Foundation, Inc. ("FFRF") lack standing to challenge Judge Mack's opening ceremonies in

a suit seeking only declaratory relief. Uncertainties still surround
Establishment Clause cases. "But of one thing we may be sure: Those
who do not possess Art. III standing may not litigate as suitors in the
courts of the United States." *Valley Forge Christian Coll. v. Ams. United
for Separation of Church & State, Inc.*, 454 U.S. 464, 475–76 (1982). Roe
and FFRF do not get a free pass from this rule. "The Establishment
Clause is no exception to the requirement of standing." *Barber v. Bryant*,
860 F.3d 345, 352 (5th Cir. 2017). "Plaintiffs always have the burden to
establish standing." *Id.* Roe and FFRF have failed to carry that burden
here.

## I.    ROE LACKS STANDING.

### A.    Roe Has Not Been to Judge Mack's Courtroom in More Than Four Years and Now Has a Policy of Never Going There in the Future.

We begin with whether Roe has standing. He does not. "Attorney
Roe is an atheist who describes himself as 'non-religious.'" ROA.1509.
Roe states that he "objects" to Judge Mack's opening ceremonies. *Id.*

Roe observed the ceremonies several times between August 2015
and July 2017. ROA.1507. But he has not gone back to Judge Mack's
courtroom since then. "Subsequent to his 2017 appearances in Judge

Mack's courtroom," Roe "decided to no longer represent clients before Judge Mack." ROA.1509. Thus, Roe will not be exposed to Judge Mack's opening ceremonies going forward. "Roe has a policy of not appearing in Judge Mack's court in the future." ROA.1959. Roe will not see Judge Mack again unless the opening ceremonies end. *See* ROA.1510 ("If Judge Mack's courtroom-prayer practice were discontinued, Attorney Roe would resume practicing within the Precinct 1 court.").

Importantly, Roe made a voluntary choice to avoid Judge Mack's courtroom. "Roe's decision to cease practicing before Judge Mack was made by him alone." ROA.1957. Roe is blessed with, as he put it, "the luxury of choice." ROA.1130. "I can choose what [cases] I take and what I don't, and I—I don't need to do this to myself." *Id*.

Because Roe has not been to Judge Mack's courtroom in more than four years and has adopted a policy of not going there in the future, Roe lacks standing. In *Barber,* this Court explained that "[a] plaintiff has standing to challenge a religious display where his stigmatic injury results from a 'personal confrontation' with the display." 860 F.3d at 353 (cleaned up). "But once that display is removed from view, standing dissipates because there is no longer an injury." *Id*. at 353–54 (citing

*Staley v. Harris Cty.*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc)). Thus, for example, "an individual cannot 'personally confront' a warehoused monument." *Id.* at 354. Because of Roe's policy of declining cases before Judge Mack, Roe no longer personally confronts the opening ceremonies to which he objects.[1]

In *Staley*, plaintiff "Staley, an attorney, claimed Article III standing because she passed [a religious] monument going to and from the Courthouse in the course of her occupation." *Staley*, 485 F.3d at 309. Before the *en banc* court heard oral argument, however, "the County removed the monument from the public grounds and placed it in storage." *Id.* at 307. Because that action placed the monument "[o]ut of sight in some warehouse," this Court held that it "no longer raises the potential Establishment Clause violations that offended Staley." *Id.* at 309. So too here. Judge Mack's courtroom, like the religious monument in *Staley* is now out of Roe's sight. He therefore lacks standing.

---

[1] The *Barber* Court noted that "[f]uture injuries can provide the basis for standing, but they 'must be *certainly impending* to constitute injury in fact,' and 'allegations of *possible* future injury' are not sufficient." *Barber*, 860 F.3d at 357 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up) (emphasis in *Barber* and *Clapper* opinions)).

Roe is also like the plaintiffs in *Doe v. Tangipahoa Parish School Board*, 494 F.3d 494 (5th Cir. 2007) (en banc), and *Doe v. Madison School District No. 321*, 177 F.3d 789 (9th Cir. 1999) (en banc).  The plaintiffs in *Tangipahoa* filed suit to enjoin invocations at school board meetings.  But this Court dismissed for lack of standing because none of the "Does ever attended a school board session at which a prayer like those challenged here was recited."  494 F.3d at 498.  Although Roe has attended Judge Mack's opening ceremonies in the past, he will not do so again in the future.  He therefore lacks standing to seek prospective relief.  *See Madison*, 177 F.3d at 797 (holding that plaintiff lacked standing to challenge school district policy permitting student prayers at high school graduation ceremonies because "she does not claim that she will attend another graduation ceremony in the future").

Roe's decision not to work on cases before Judge Mack also makes him similar to the plaintiff in *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).  Plaintiff Yniguez, a state government employee, brought a Section 1983 challenge to the Arizona state constitution's provision making English the official language of all government functions and actions.  *Id*. at 48 (citing  ARIZ. CONST., art. XXVIII).

Yniguez sought both declaratory and injunctive relief.  *Id*. at 50.
Although she initially had standing as a state employee to challenge the
provision, the Supreme Court held that when "Yniguez voluntarily left
the State's employ" during the suit she thereby "made her claim for
prospective relief moot." *Id*. at 48.  "Yniguez left her state job in April
1990 to take up employment in the private sector, where her speech was
not governed by Article XXVIII.  At that point, it became plain that she
lacked a still vital claim for prospective relief." *Id*. at 67.

Yniguez quit her job, and Roe has quit taking cases before Judge
Mack.  Just as Yniguez's claim failed due to mootness, Roe's claim fails
for lack of standing.  In both cases, the principle is the same.  Yniguez
initially had standing as a state employee when she filed suit, but her
claim became moot (i.e., she lost her standing) when she quit her job
during the litigation.  Roe quit taking cases before Judge Mack prior to
filing this suit so he never had standing in the first place.

This Court obviously cannot award any injunctive relief with
respect to opening ceremonies Roe observed in the past. *See Harris v.
City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998) ("The Constitutional
harms Harris sought to enjoin, if indeed there were any, have come and

7

gone; we simply cannot enjoin that which has already taken place."). And because of Roe's policy of avoiding Judge Mack going forward, this Court may not award declaratory relief because Roe has no standing to challenge future opening ceremonies. *See City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) ("[I]f a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy, … the court [is] unable to award relief.") (opinion cited with approval in *Harris*, 151 F.3d at 191 n.5).

## B. Roe Fails This Court's Test for Standing to Sue a State Court Judge for Prospective Relief.

This Court's cases establish that, to have standing to sue a state court judge for prospective relief, a plaintiff must show a "significant likelihood" that he will encounter the judge in the future and be harmed again as in past encounters. Roe fails that test. Roe has failed to show, and has not even attempted to show, a significant likelihood that he will once again encounter Judge Mack's opening ceremonies in the future.

In its 2020 decision in *Serafine v. Crump*, this Court summed up its cases:

> Our court has addressed standing in the context of an action seeking prospective relief against a state-court judge on three occasions. Collectively, as discussed below, our decisions establish: a plaintiff's suing a state-court judge and seeking prospective declaratory or injunctive relief must show a significant likelihood she will encounter the same judge in the future, under similar circumstances, with a likelihood the same complained-of harm will recur.

800 F. App'x 234, 237 (5th Cir. 2020) (citations omitted).  This Court cited *Bauer v. State of Texas*, 341 F.3d 352 (5th Cir. 2003); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283 (5th Cir. 1992) (en banc); and *Adams v. McIlhany*, 764 F.2d 294 (5th Cir. 1985).

*Society of Separationists* is particularly instructive.  There, the *en banc* Court observed that "[t]his court and others have often held that plaintiffs lack standing to seek prospective relief against judges because the likelihood of future encounters is speculative."  959 F.2d at 1286; *see also Bauer*, 341 F.3d at 358; *Adams*, 764 F.2d at 299 ("The fact that it is most unlikely that Adams will again come into conflict with Judge McIlhany in circumstances similar to the ones presented here, and with the same results, precludes a finding" that Adams has standing to seek declaratory relief).  This Court explained that it does "not sit to review the actions of state judges in microscopic detail when there is no

continuing harm and no real threat of repeated injury." *Soc'y of Separationists*, 959 F.2d at 1288. "Principles of comity and federalism, in addition to Article III's jurisdictional bar, mandate that we intervene in the management of state courts only in the extraordinary case." *Id.* at 1286.

*Society of Separationists* also recognized that, in addition to Article III and principles of comity and federalism, there is another important reason to refrain from granting declaratory relief against a judge. "Issuing a declaratory judgment would support an award of attorney's fees against Judge Herman under § 1988. This is an 'end run' around a defendant's immunity." *Id.* at 1287. This Court stated that "[w]e should be hesitant to inhibit state judges from exercising the discretion that comes with their job by imposing costs solely to protect against a hypothetical risk of future harm." *Id.*

Roe has not made the showing required by this Court's cases. To the contrary, he has shown exactly the opposite. His own testimony confirms there is *not* a "significant likelihood" or, indeed, any likelihood that he will ever again find himself in Judge Mack's courtroom. In his deposition, Roe testified that "I don't take cases there." ROA.1129. Roe

enjoys the "luxury of choice," ROA.1130, and he has chosen to adopt a "policy of not appearing in Judge Mack's court in the future." ROA.1959.

### C. This Court Should Reject the "Offended Observer" Theory of Standing in Establishment Clause Cases.

Roe is "an atheist who describes himself as 'non-religious'" and he "objects" to Judge Mack's opening ceremonies. ROA.1509. Those averments, however, fall short of conferring standing to challenge Judge Mack's practices in a suit for prospective relief. Simply put, the "offended observer" theory of standing does not make the grade.

In *American Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019), the AHA "want[ed] a federal court to order the destruction of a 94-year-old war memorial because its members [were] offended." *Id*. at 2098 (concurring opinion of Justice Gorsuch joined by Justice Thomas). But, as Justice Gorsuch explained, "[t]his 'offended observer' theory of standing has no basis in law." *Id*.

Justice Gorsuch pointed out that the Supreme Court "has already expressly rejected 'offended observer' standing under the Establishment Clause," including in the *Valley Forge* case. *Id*. at 2100. In *Valley Forge*, the Court explained that "the psychological consequence presumably produced by observation of conduct with which one disagrees" is "not an

injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." 454 U.S. at 485–86. This Court, too, should reject the "offended observer" theory of standing in Establishment Clause cases. Under *Valley Forge* and Justice Gorsuch's *American Legion* concurrence, the subjective harm to Roe's psyche from Judge Mack's opening ceremonies should not qualify as an Article III injury. *See also Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.").

Other cases also support rejection of the offended observer theory in this case. In *Town of Greece v. Galloway*, 572 U.S. 565 (2014), for example, the Court rejected a challenge to the town's practice of opening board meetings with a prayer. The offended residents who brought the case claimed that "the prayers gave them offense and made them feel excluded and disrespected." *Id*. at 589 (plurality opinion). Perhaps they did. But their subjective feelings of offense did not carry the day: "Offense, however, does not equate to coercion. Adults often encounter speech they find disagreeable; and an Establishment Clause violation is not made out any time a person experiences a sense of affront from the

expression of contrary religious views in a legislative forum[.]" *Id.* Although the Court rejected the constitutional challenge to the town's prayer practice on the merits rather than on standing grounds, the Court's conclusion that feelings of offense and affront from non-coercive expressions of religiosity do not inflict an Establishment Clause injury also supports the conclusion that such feelings do not qualify as an injury for Article III standing purposes. Here, Judge Mack's prayer practice is non-coercive, as this Court has already held. *See Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 314 (5th Cir. 2021). Roe lacks standing to challenge a non-coercive practice that he has a policy of avoiding.

Justice Kavanaugh, writing for the D.C. Circuit during his service on that court, considered "personal offense" standing in the context of an Establishment Clause case:

> As the Supreme Court has often stated, mere personal offense to government action does not give rise to standing to sue. *Allen v. Wright,* 468 U.S. 737, 752–54 (1984); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 575–76 (1992). "By the mere bringing of his suit, *every* plaintiff demonstrates his belief that a favorable judgment will make him happier. But although a suitor may derive great comfort and joy" from knowing that the Government is following constitutional imperatives, "that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable

> Article III injury." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 107 (1998). "Recognition of standing in such circumstances would transform the federal courts into no more than a vehicle for the vindication of the value interests of concerned bystanders." *Allen,* 468 U.S. at 756 (internal quotation marks omitted).

*In re Navy Chaplaincy*, 534 F.3d 756, 763 (D.C. Cir. 2008). This Court cited the D.C. Circuit's opinion with approval in *Barber*, 860 F.3d at 353 n.4.

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), although not an Establishment Clause case, also cuts against finding standing here. *Lyons* held that a plaintiff put in a chokehold by the police lacked standing to seek an injunction barring the police from using chokeholds in the future. Although plaintiff Lyons "alleged that he feared he would be choked in any future encounter with the police," the Supreme Court held that such "emotional upset" (as the Court called it) did not give Lyons standing. *Id.* at 107 n.8. The Court explained: "The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id.* So too here. Even if Roe was traumatized by his prior

14

encounters with Judge Mack, that does not give him standing to sue for declaratory relief.

In *Moore v. Bryant*, 853 F.3d 245 (5th Cir. 2017), this Court held that a trial attorney lacked standing to challenge a form of expression in the courtroom that was offensive to him. In that case, an African-American lawyer from Mississippi challenged the constitutionality of the Mississippi state flag, which included the Confederate battle emblem in one corner. He claimed that the flag was "painful, threatening, and offensive" to him and caused him "stigmatic injury." *Id.* at 249. He also claimed that "he has standing because he encounters the flag in his work as a prosecutor" and it created a "hostile work environment." *Id.* at 251. This Court, however, held that Moore lacked standing to challenge the flag on equal protection grounds. The Court explained that "Plaintiff's exposure to the Mississippi flag in courtrooms where he practices" was "insufficient to satisfy the injury-in-fact requirement" even though his "stigmatic harm is strongly, sincerely, and severely felt." *Id.* at 251–52.

Roe also claims a second-order harm from his objection to the opening ceremonies. He states that he "has had to decline business in order to avoid appearing in Judge Mack's courtroom." ROA.1509. The

cause of that harm, however, is not Judge Mack's opening ceremonies but Roe's own voluntary choice "to no longer represent clients before Judge Mack." *Id.* If Roe's offended observer status does not confer standing on him, neither does the self-imposed economic harm caused by his reaction to the offense. *See Cameron Cty. Hous. Auth. v. City of Port Isabel*, 997 F.3d 619, 623 (5th Cir. 2021) ("Obviously, [standing is] also lacking where the plaintiff's injury is self-inflicted."); *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) ("[S]tanding cannot be conferred by a self-inflicted injury."); *Taylor v. FDIC*, 132 F.3d 753, 767 (D.C. Cir. 1997) (employees who voluntarily resigned their employment lacked standing to seek reinstatement because that would be "a remedy for injury that is in large part self-inflicted").

### D. Roe's Status as a Member of the Bar and a Courtroom Litigator Undermines His Claim of Injury.

In considering Roe's claim that Judge Mack's opening ceremonies inflicted standing-conferring injury on him, it should not be overlooked that Roe is a member of the Texas bar. Not only that, Roe is a courtroom litigator.

These facts are relevant because applying for and accepting bar membership and choosing to practice law as a litigator have

consequences. It is the stock in trade of a litigator to be exposed to viewpoints that the litigator may find objectionable or offensive. A litigator is expected to withstand exposure to such viewpoints. Indeed, a litigator may be called upon to advance, for a client, viewpoints with which the litigator disagrees, perhaps vehemently.

The Texas Disciplinary Rules of Professional Conduct state:

> Having accepted employment, a lawyer should act with competence, commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf. A lawyer should feel a moral or professional obligation to pursue a matter on behalf of a client with reasonable diligence and promptness *despite opposition, obstruction or personal inconvenience to the lawyer*.

Rule 1.01, cmt. 6 (emphasis added). Although lawyers do not check their constitutional rights at the courthouse door, courtroom work in an adversarial system of justice requires some fortitude. No one forced Roe to become a litigator; this is the profession he has chosen. And nothing requires him to enter Judge Mack's courtroom. Indeed, he decided to stop doing so four years ago.

As an attorney, Roe should understand that it is settled law that prayers very similar (if not materially identical) to the ones at issue here do not violate the Establishment Clause. (He should also understand

that the words of prayer offered by the volunteer chaplains participating in Judge Mack's program constitute both free speech and the free exercise of religion protected by the first two clauses of the First Amendment.) The Supreme Court explained in *Town of Greece* that "[i]t is presumed that the reasonable observer is acquainted with" the American tradition of legislative prayers and prayers such as "God save the United States and this honorable Court" and that a reasonable observer "understands that its purposes are to lend gravity to public proceedings and to acknowledge the place religion holds in the lives of many private citizens, not to afford government an opportunity to proselytize or force truant constituents into the pews." 572 U.S. at 587. The reasonable-observer presumption applied in *Town of Greece* should be deemed irrebuttable in the case of an attorney who has a professional responsibility to understand basic constitutional law.

The longstanding nature of the Supreme Court's practice of opening its sessions with a prayer to God confirms not only the constitutionality of that practice, but also that it inflicts no cognizable injury on attorneys for standing purposes. As the Supreme Court observed in *Marsh v. Chambers*, 463 U.S. 783, 786 (1983):

> The opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country. … In the very courtrooms in which the United States District Judge and later three Circuit Judges heard and decided this case, the proceedings opened with an announcement that concluded, "God save the United States and this Honorable Court." The same invocation occurs at all sessions of this Court.

Thousands of lawyers have argued in the Supreme Court over the years—including lawyers representing FFRF. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587 (2007). To our knowledge, however, no Supreme Court bar member has ever filed a lawsuit seeking to stop the Court from calling upon God to save it. The Justices presumably would have ended the practice long ago if they believed it to be truly offensive or injurious. *Cf. Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963, 971 (5th Cir. 1992) (characterizing the Supreme Court's prayer practice as "innocuous" and non-coercive). More than 300,000 attorneys have been admitted to the Supreme Court bar over the years. *See* Kimberly Strawbridge Robinson, *Supreme Court Bar Admission Has Its Perk*s, BLOOMBERG LAW (May 19, 2016), https://tinyurl.com/fapeyprm. Many new bar members come to the Court to be sworn in on an argument day and stay for the day's cases. All of them are exposed to the Court's

prayer. Yet we know of no Supreme Court bar member who has brought an Establishment Clause suit against the Justices.

Roe's status as a member of the bar affords him no special claim to standing. *See*, *e.g.*, *Shea v. Brister*, 26 F. Supp. 2d 943 (S.D. Tex. 1998). In *Shea*, a Texas attorney sought to enjoin then-Judge Brister from displaying a copy of the Ten Commandments in his courtroom. At the time, the future Justice of the Texas Supreme Court was "a Texas state district court judge presiding over the 234th Judicial District Court, Harris County, Texas." *Id*. at 944. Although Shea had "no pending cases in Brister's court," he argued "that his status as an attorney sworn to uphold the Constitution endows him with standing." *Id*. at 946. The court disagreed. It reasoned that "Shea's status as an attorney who has taken the oath does not alone give him standing in this case" because "the Constitution does not afford him any distinction to air generalized grievances before this Court." *Id*.

Roe's claim of injury is also belied by his prelitigation conduct. Roe filed this case on May 29, 2019, almost two years after his last encounter with Judge Mack sometime in July 2017. *Cf. Soc'y of Separationists*, 959 F.2d at 1288 ("O'Hair and the Society filed their complaint two years

after O'Hair's encounter with Judge Herman. Any controversy had long since subsided.").[2] He filed suit only after he allowed himself to be exposed to Judge Mack's opening ceremonies "at least 20 times" between 2014 and 2017. ROA.15; ROA.1957. Apparently all but three of the exposures occurred more than two years before he filed suit in this case. ROA.29. Roe may not be heard to complain about any exposure occurring before May 29, 2017. Because Section 1983 has no built-in limitations period, courts look to state law for the applicable limit. *See Wilson v. Garcia*, 471 U.S. 261 (1985); *Reed v. Goertz*, 995 F.3d 425, 431 (5th Cir. 2021) ("Section 1983 claims are subject to a state's personal injury statute of limitations."). Texas' two-year limitations period for personal injury suits accordingly applies here. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

In sum, Attorney Roe may not like the fact that his chosen profession caused him in the past to be exposed to Judge Mack's opening

---

[2] Roe also joined a suit against Judge Mack filed on March 21, 2017. *See* Pls.' Orig. Compl. & Req. for Decl. & Inj. Relief, *Freedom From Religion Found., Inc. v. Mack*, No. 4:17-cv-881 (S.D. Tex.), Doc. 1. That suit, however, was dismissed for lack of standing. *See Freedom From Religion Found., Inc. v. Mack*, No. 4:17-cv-881, 2018 WL 6981153, at *3–5 (S.D. Tex. Sept. 27, 2018) (ROA.456–60).

ceremonies, but that does not give him standing to try to use the federal courts to abolish the practice.

## II.   FFRF LACKS STANDING.

Because Roe lacks standing, so too does FFRF.   *See Soc'y of Separationists*, 959 F.2d at 1288 (holding that the Society had no standing after ruling that Society member Robin Murray-O'Hair lacked standing).   FFRF is an organization based in faraway Madison, Wisconsin, that advocates for the separation of church and state.   *See Gaylor v. Reagan*, 553 F. Supp. 356, 357 (W.D. Wis. 1982).   FFRF has no standing in its own right to complain about the courtroom practices of a justice of the peace in the Lone Star State.

Nor can FFRF claim standing based on the alleged standing of any of its other members because FFRF has not identified any other member allegedly injured by Judge Mack other than Roe.   *See* ROA.1165.   FFRF is not aware of any other members scheduled to appear in Judge Mack's court.   *Id.*   *Cf. Soc'y of Separationists*, 959 F.2d at 1288 ("Other Society members are not aggrieved by Judge Herman's exclusion of O'Hair from a venire.").

*Amici* note that Roe's episodic membership in FFRF appears to be contrived for litigation purposes. Roe first became an FFRF member on June 5, 2017, just two days before FFRF filed its first amended complaint in *Freedom From Religion Foundation, Inc. v. Mack*, No. 4:17-cv-881 (S.D. Tex.), Doc. 22. The court dismissed that case for lack of standing on September 27, 2018, and Roe ended his membership (or allowed it to end) about a month later, on November 4, 2018. About five months later, Roe rejoined FFRF on March 20, 2019, two months before the instant action was commenced on May 29, 2019. *See* ROA.1637 (setting forth the dates of Roe's FFRF membership).

In short, FFRF's presence in this case as a plaintiff does not make up for Roe's lack of standing. Neither Roe nor FFRF has standing.

## CONCLUSION

For the foregoing reasons, this Court should vacate the judgment of the district court and remand the case with instructions to dismiss for lack of jurisdiction.

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
Gene C. Schaerr
H. Christopher Bartolomucci
 *Counsel of Record*
Brian J. Field
Joshua J. Prince
Annika M. Boone*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

*Counsel for Amici Curiae*

*Not admitted in the District of
Columbia.  Practicing under the
supervision of D.C. attorneys pursuant
to D.C. Court of Appeals Rule 49(c)(8).

Dated:  September 29, 2021

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on September 29, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,782 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 2016 in 14-point Century Schoolbook font.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci